511 A.2d 1349

**Sherry PIRCHES and George Pirches**

v.

**GENERAL ACCIDENT INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 1986.

Filed June 13, 1986.

Joseph P. Connor, III, Philadelphia, for appellant.

Elliot B. Platt, Philadelphia, for appellees.

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

WICKERSHAM, Judge:

General Accident Insurance Company appeals from the order of the Court of Common Pleas of Philadelphia County dismissing its petition to modify and/or vacate the arbitration award entered against it and in favor of appellees, Sherry and George Pirches.

Appellant had issued an automobile insurance policy to appellees, a married couple who reside in Pennsylvania. On October 16, 1981, while a passenger in a car owned and operated by her mother, Mrs. Foy, Sherry Pirches was injured when a taxicab went through a stop sign in Daytona Beach, Florida, and collided with her mother's car. The taxi driver was cited by the Daytona Beach Police Department for causing the accident. Mrs. Foy was insured by Colonial Penn Insurance Company; the taxi was owned by Economy Cab Company and was coincidentally insured by appellant. Mrs. Foy, the taxi driver, and Economy Cab were all domiciliaries of Daytona Beach.

Sherry Pirches brought a claim against Economy Cab and the driver of the taxi. At the time of the accident, the taxicab had policy limits in the amount of $10,000 per person and $20,000 per occurrence, which were the minimum amounts required by the State of Florida. As a result of the claims made against Economy Cab, appellant paid the

entire policy limit of $20,000: $5,000 to Mrs. Pirches, $5,000 to Mrs. Foy, and $10,000 to another party who had been a passenger in the taxicab.

In addition, Sherry Pirches brought a claim under her mother's underinsured motorist policy, which had limits of $15,000 per person and $30,000 per occurrence. Both she and Mrs. Foy received $10,000 each under that policy.[1]

Subsequently, appellees brought the instant claim against appellant, pursuant to the uninsured motorist provisions of their own Pennsylvania policy of insurance. On November 27, 1984, the lower court ordered the case to proceed to arbitration. Following a hearing on February 20, 1985, the arbitrators awarded Sherry Pirches $37,500, which was reduced by the $15,000 that she had already received from the prior claims, and awarded $2,500 to George Pirches on his loss of consortium claim. On May 31, 1985, appellant's motion to modify or vacate the award of the arbitrators was denied and the award of the arbitrators was confirmed. This appeal timely followed.

Appellant raises three issues before us:

I. Whether the arbitrators and subsequently the lower court failed to exclude from plaintiff, Sherry Pirches', case medical reports of plaintiff, Sherry Pirches, which failed to pass the standard of certainty required by Pennsylvania courts to prove causation through expert testimony.

II. Whether the arbitrators and the lower court erred in concluding that the claim asserted by Sherry Pirches and the claim asserted by George Pirches were uninsured motorist claims rather than underinsured motorist claims.

III. Whether the arbitrators and lower court erred in granting the loss of consortium claim of George Pirches where he was neither involved in the accident nor injured as a result of the accident nor was there a specific policy

1. This was the maximum amount available that they could receive under Mrs. Foy's policy, because, as previously noted, both Mrs. Pirches and Mrs. Foy had already received $5,000 each from the taxicab company.

provision allowing for such recovery of loss of consortium.

Brief for Appellant at 3.

■ Before turning to the merits, we note that the trial court utilized the broader scope of review applicable to statutory arbitration under the Act of 1927, while the insurance policy indicates that this was a common law arbitration. Lower ct. op. at 1, R.R. at 12a. Neither appellant nor appellees objected to this scope of review, however. Furthermore, a review of the arbitration itself reveals that it was conducted as an arbitration under the Act of 1927, with the agreement of the parties. R.R. at 80a, 82a. Even appellant's petition to modify and/or vacate the arbitration award specified that it was pursuant to the Arbitration Act of 1927, a fact which was admitted by appellees in their answer to the petition. R.R. at 176a, 179a, 382a. Therefore, we will employ the same scope of review. *See Littlejohn v. Keystone Insurance Co.*, 353 Pa.Super. 63, 509 A.2d 334 (1986); *Gentile v. Weiss*, 328 Pa.Super. 475, 477 A.2d 544 (1984); *Boyle v. State Farm Mutual Automobile Insurance Co.*, 310 Pa.Super. 10, 456 A.2d 156 (1983); 5 P.S. §§ 170, 171 (repealed by Act of April 28, 1978, P.L. 202, No. 142, § 501(c)); 42 Pa.C.S. §§ 7314, 7315.

Appellant first argues that the arbitrators and the lower court erred in failing to exclude certain expert medical reports. Specifically, appellant claims that the medical reports submitted by appellees failed to meet the standard set forth in *Kravinsky v. Glover*, 263 Pa.Super. 8, 396 A.2d 1349 (1979).

■ It is well-settled that the admission of expert testimony is a matter within the sound discretion of the trial court, whose decision will not be reversed unless the court clearly abused that discretion. *Walasavage v. Marinelli*, 334 Pa.Super. 396, 483 A.2d 509 (1984); *Klyman v. Southeastern Pennsylvania Transportation Authority*, 331 Pa. Super. 172, 480 A.2d 299 (1984); *Kubit v. Russ*, 287 Pa.Super. 28, 429 A.2d 703 (1981). Expert testimony is admissible

when it involves explanations and inferences not within the ordinary training, knowledge and experience of the jury. *Kubit v. Russ, supra; Lebesco v. Southeastern Pennsylvania Transportation Authority*, 251 Pa.Super. 415, 380 A.2d 848 (1977). Such was the case with the medical testimony herein. To prove proximate causation, the medical opinion need only demonstrate with a reasonable degree of medical certainty that the alleged negligence increased the risk of injury actually sustained, and then the jury must decide whether that conduct was a substantial factor in bringing about the injury. *Jones v. Montefiore Hospital*, 494 Pa. 410, 431 A.2d 920 (1981); *Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674 (1980).

As we stated in *Kravinsky v. Glover, supra*, however, the expert's testimony is incompetent if it lacks an adequate basis in fact or if the manner in which it is expressed is deficient.

When a party must prove causation through expert testimony the expert must testify with "reasonable certainty" that "in his 'professional opinion, the result in question did come from the cause alleged.' " *McCrosson v. Philadelphia Rapid Transit Co.*, 283 Pa. 492, 496, 129 A. 568, 569 (1925). *See Hamil v. Bashline*, [481 Pa. 256, 392 A.2d 1280 (1978) ]. An expert fails this standard of certainty if he testifies " 'that the alleged cause "possibly", or "could have" led to the result, that it "could very properly account" for the result, or even that it was "very highly probable" that it caused the result.' *Niggel v. Sears, Roebuck & Co.*, 219 Pa.Super. 353, 354, 355, 281 A.2d 718, 719 (1971); *Menarde v. Philadelphia Trans. Co.*, 376 Pa. 497, 103 A.2d 681 (1954); *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256 (1926); *Moyer v. Ford Motor Co.*, 205 Pa.Super. 384, 209 A.2d 43 (1965)." *Albert v. Alter*, 252 Pa.Super. 203, 225, 381 A.2d 459, 470 (1977).

"The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a[n] ... expert is evidence. If the fact finder chooses to believe it, he

can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that the condition was legally caused by the defendant's conduct.... [I]t is the intent of our law that if the plaintiff's ... expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a [factfinder] can make a decision with sufficient certainty so as to make a legal judgment." *McMahon v. Young*, 442 Pa. 484, 486, 276 A.2d 534, 535 (1971). However, to make an admissible statement on causation, an expert need not testify with absolute certainty or rule out all possible causes of a condition. *Bialek v. Pittsburgh Brewing Company*, 430 Pa. 176, 242 A.2d 231 (1968); *Ritson v. Don Allen Chevrolet*, [233 Pa.Super. 112, 336 A.2d 359 (1975) ], *supra*. Expert testimony is admissible when, *taken in its entirety*, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury. *Hussey v. May Department Stores, Inc., supra*, 238 Pa.Super. [431] at 437, 357 A.2d [635] at 638 [1976]. The expert need not express his opinion in precisely the same language we use to enunciate the legal standard. *See In re Jones*, 432 Pa. 44, 246 A.2d 356 (1968) (medical testimony need not conform to precise statutory definitions). That an expert may, at some point during his testimony, qualify his assertion does not necessarily render his opinion inadmissibly speculative. *Woods v. Pleasant Hills Motor Company*, 454 Pa. 224, 309 A.2d 698 (1973); *Commonwealth v. Joseph*, 451 Pa. 440, 304 A.2d 163 (1973).

*Id.* 263 Pa.Super. at 21–22, 396 A.2d at 1355–56 (footnotes omitted). Our court underscored the latter statement by immediately quoting Feldman, Pennsylvania Trial Guide I, § 7.80 (1975 Supplement): "Nor is the expert's testimony destroyed by the fact that in one part of his testimony he used language weaker than the requisite shiboleth, provided that at some point he states his opinion with sufficient

definiteness." *Id.*, 263 Pa.Superior Ct. at 22 n. 11, 396 A.2d at 1356 n. 11.

■ We have closely reviewed the instant expert testimony in its entirety to determine whether it expresses the reasonable medical certainty required by *Kravinsky v. Glover* and its progeny. *See, e.g., In re Dobrowsky,* 735 F.2d 90 (3d Cir.1984); *Jones v. Montefiore Hospital, supra; Gradel v. Inouye, supra; Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978); *Williams v. Dulaney,* 331 Pa.Super. 373, 480 A.2d 1080 (1984); *McCann v. Amy Joy Donut Shops, A Division of American Snacks, Inc.,* 325 Pa.Super. 340, 472 A.2d 1149 (1984); *Walsh v. Snyder,* 295 Pa.Super. 94, 441 A.2d 365 (1981); *Smialek v. Chrysler Motors Corp.,* 290 Pa.Super. 496, 434 A.2d 1253 (1981). Sherry Pirches did not contend that the accident caused her osteochondroma, only that the accident aggravated it and caused the symptoms that required its surgical removal. We agree with the lower court that Dr. Bocher's report, taken in its entirety, expressed the reasonable medical certainty necessary to meet the *Kravinsky* standard. At one point, Dr. Bocher clearly linked the aggravation of the osteochondroma with the accident:

> It would appear to me that since all of these symptoms occurred at the time of her accident although the exostosis could have pre-existed this injury, by her history she was not aware of any symptoms; and, therefore, the trauma of the injury could have been sufficient to stimulate this lesion to grow sufficiently to produce the symptoms that she is presently having. Unless it could be documented that she had these symptoms prior to the accident, *I don't see how one could avoid the conclusion that there is a cause and effect relationship between the accident and the present problems she is having.*

R.R. at 341a (emphasis added). That he may have used less definite language in other parts of his testimony did not render his opinion inadmissibly speculative, as long as he stated his opinion with sufficient definiteness at some point.

*See Kravinsky, supra.* Therefore, we cannot conclude that the panel erred in admitting the expert medical reports.

■ Second, appellant argues that the arbitrators and the lower court erred in concluding that the claims asserted by appellees were uninsured rather than underinsured motorist claims.[2] We must disagree, based on the clear language of the policy, which defined "uninsured motor vehicle" in the following manner:

"Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. ...

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged.

3. ...

4. ...

R.R. at 203a. Appellant admits that appellees' covered autos were garaged in Pennsylvania, which had minimum coverage requirements of $15,000 per person, $30,000 per occurrence. 40 P.S. § 1009.104(a) (now repealed). Appellant also admits that the Florida tortfeasor who caused the accident was only covered for liability in the amount of $10,000 per person, $20,000 per occurrence, which was the minimum requirement under the financial responsibility law of the State of Florida. The fact that Economy Cab's policy

2. This is a matter of some practical importance, because appellees had two automobiles insured by appellant, each with $30,000 worth of coverage for both uninsurance and underinsurance. While our courts have held that uninsured motorist benefits may be stacked, *see, e.g., Harleysville Mut. Cas. Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968); *Caputo v. Allstate Ins. Co.,* 344 Pa.Super. 1, 495 A.2d 959 (1985); *Estate of Rosato v. Harleysville Mut. Ins. Co.,* 328 Pa.Super. 278, 476 A.2d 1328 (1984), they have held at the same time that underinsurance motorist benefits cannot be stacked. *See, e.g., Vogel v. National Grange Mut. Ins. Co.,* 332 Pa.Super. 384, 481 A.2d 668 (1984); *Votedian v. General Accident Fire and Life Assurance Corp.,* 330 Pa.Super. 13, 478 A.2d 1324 (1984).

provided for increased coverage if its vehicle was in an accident outside the State of Florida is irrelevant. The accident occurred in Florida, and the tortfeasor's insurer (also appellant) paid out the $20,000 policy limit, with $5,000 going to Sherry Pirches.

Therefore, *Obdyke v. Harleysville Mutual Insurance Co.*, 299 Pa.Super. 298, 445 A.2d 763 (1982), *aff'd*, 500 Pa. 107, 454 A.2d 984 (1982), cited to us by appellant, is not on point. The fact that Sherry Pirches also received $10,000 from her mother's underinsurance policy is also irrelevant to the issue of whether Economy Cab was "uninsured" under appellant's policy. *See Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). Since the Florida (Economy Cab) bodily injury policy provided for less coverage than the minimum limit for bodily injury liability specified by Pennsylvania law, appellees' claims, under the express terms of their own policy with appellant, involved an uninsured motorist matter.

Finally, appellant argues that the arbitration panel and the lower court erred in awarding George Pirches $2,500 for loss of consortium.[3] Appellant's argument is not with the amount of the award, but that there was an award at all, because such an award, according to appellant, is not cognizable under the Uninsured Motorist Act, 40 P.S. § 2000 *et seq.*[4] Both appellant and appellees agree that this is a question of first impression in Pennsylvania.

■ The provisions of the Uninsured Motorist Act must be liberally construed, so that innocent victims will be protected from irresponsible drivers. *Harleysville Mutual Casualty Co. v. Blumling, supra; Walls v. City of Pitts-*

3. At the arbitration hearing, George Pirches testified that as a result of the accident, lack of funds and his wife's pain prevented him from going out with his wife. The accident caused him to assume additional responsibilities for keeping the house. Sherry Pirches' pain interfered with their sexual relationship. Problems with creditors caused him embarrassment, particularly because he deals with credit problems for his employer, Philadelphia Electric Company.

4. Act of August 14, 1963, P.L. 909, § 1, 40 P.S. § 2000, as amended by Act of December 19, 1968, P.L. 1254, No. 397, § 1.

*burgh,* 292 Pa.Super. 18, 436 A.2d 698 (1981). Liberal construction of the Act requires our court to find coverage unless strong legal or equitable considerations to the contrary are present. *State Farm Insurance Co. v. Bullock,* 316 Pa.Super. 475, 463 A.2d 463 (1983); *Boyle v. State Farm Mutual Automobile Insurance Co., supra.*

█ Both George and Sherry Pirches were named insureds in their policy with appellant. The relevant policy provision states:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. Sustained by a covered person; and
2. Caused by an accident.

R.R. at 203a (emphasis in original). A "covered person" is defined as:

"Covered person" as used in this Part means:

1. You or any family member.
2. Any other person occupying your covered auto.
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

*Id.* (emphasis in original).

Thus, as a named insured, George Pirches is a "covered person." The policy provides damages that "a" covered person may be legally entitled to recover from the uninsured driver if "a" covered person suffers bodily injury. There is no question that Sherry Pirches, "a covered person," suffered bodily injury. The policy does not limit payments to damages that the injured covered person may collect. If it did, it would state that it would pay damages for injuries that a covered person may collect for injuries to *that* covered person. It is not so limited.

Certainly, George Pirches could collect, or attempt to collect, for loss of consortium from the tortfeasor/uninsured driver. *See Reuter v. United States,* 534 F.Supp. 731

(W.D.Pa.1982); *Hopkins v. Blanco,* 224 Pa.Super. 116, 302 A.2d 855 (1973), *aff'd,* 457 Pa. 90, 320 A.2d 139 (1974). And it is the policy of uninsured motorist coverage to protect an injured insured's right to recover when the injuries are caused by an uninsured driver. *Harleysville Mutual Casualty Co. v. Blumling, supra; Estate of Rosato v. Harleysville Mutual Insurance Co.,* 328 Pa.Super. 278, 476 A.2d 1328 (1984). The policy provides for payment of damages that George Pirches is "legally entitled to recover." This court has held that phrase, "legally entitled to recover," to be ambiguous, requiring it to be construed in a manner most favorable to the insured. *Boyle v. State Farm Mutual Automobile Insurance Co., supra.* George Pirches is legally entitled to recover for his loss of consortium. His claim is covered by the policy.

Nothing in the Uninsured Motorist Act or in Pennsylvania law prohibits George Pirches' recovery. The Act requires coverage for "... persons ... who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom...." Remembering that the Act is to be liberally construed in favor of coverage, we hold that this language encompasses a consortium claim.

We note that while there do not appear to be any Pennsylvania cases on point,[5] we have held that a cause of action for loss of consortium can be maintained under the No-fault

---

5. While there seem to be no Pennsylvania cases on point, an award for loss of consortium under uninsured motorist coverage has been considered in other jurisdictions, with varying results. *See, e.g., United States Auto. Ass'n v. Warner,* 64 Cal.App.3d 957, 135 Cal.Rptr. 34 (1976); *Arguello v. State Farm Mut. Auto. Ins. Co.,* 42 Colo.App. 372, 599 P.2d 266 (1979); *Mobley v. Allstate Ins. Co.,* 276 So.2d 495 (Fla.Dist.Ct.App.1973); *Weemhoff v. The Cincinnati Ins. Co.,* 37 Ohio Misc. 14, 66 Ohio Ops.2d 41, 306 N.E.2d 194 (1973), *aff'd in part and rev'd in part,* 41 Ohio St.2d 231, 70 Ohio Ops.2d 428, 325 N.E.2d 239 (1975); *Sheffield v. American Indem. Co.,* 245 S.C. 389, 140 S.E.2d 787 (1965); *Thompson v. Grange Ins. Ass'n,* 34 Wash.App. 151, 660 P.2d 307 (1983).

Act, 40 P.S. § 1009.101 *et seq.* (now repealed).[6] Although there exists no specific provision in the No-fault Act either abolishing or retaining a cause of action for consortium, our court held in *Zagari v. Gralka,* 264 Pa.Super. 239, 399 A.2d 755 (1979) that such an action is encompassed by "non-economic detriment" recoverable under section 1009.301(a)(5). As we stated in *Zagari:*

> Defendant contends that because loss of consortium is not specifically enumerated as an exception to abolition of tort liability, it is no longer a recoverable item. But statutes are not presumed to make changes in rules and principles of common law or prior existing law beyond what is expressly declared in their provisions: *Commonwealth v. Miller,* 469 Pa. 24, 364 A.2d 886 (1976). And where the words of a statute are not explicit, rules of statutory construction dictate that the court (1) seek to ascertain the intent of the General Assembly, using among other indicia the former law, and (2) liberally construe the provisions of a statute so as to effect its object and promote justice. (footnote omitted)

> Applying these principles, we find that section 1009.301 provides for relief to a spouse for loss of consortium where a victim's injuries meet the criteria set forth in subsection 301(a)(5).

*Id.* 264 Pa.Super. at 248, 399 A.2d at 760, (quoting *Tchimayan v. Toscano,* 4 Pa. D. & C.3d 534, 537 (1977)).

We reject appellant's similar argument that absent language in the Uninsured Motorist Act, damages for loss of consortium should not be allowed. Because the policy seems to permit such a recovery, and because no persuasive authority exists to deny the claim, we can find no basis upon which to conclude that the arbitrator's award to George Pirches was contrary to law.

Order affirmed.

6. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 *et seq.,* repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.