## Tallman v. Aetna

*Robert Elion,* for plaintiff.
*Darryl R. Slimak,* for defendant.

WOLLET, *J.,* June 10, 1987 — On February 5, 1987, plaintiff filed a complaint seeking a declaratory judgment that a provision in an insurance policy issued by defendant, which prohibits stacking of underinsurance benefits, violates the public policy expressed in the Motor Vehicle Financial Responsibility Law. Defendant responded with a demurrer in the form of a preliminary objection

under Pa.R.C.P. 1028 that avers the complaint fails to state a claim upon which relief can be granted.

In *Hall v. Goodman Co.,* 310 Pa. Super. 465, 456 A.2d 1029 (1983), the court set forth the applicable standard of review when considering preliminary objections in the nature of a demurrer. The court must accept as true all well-pleaded material facts in the complaint, as well as reasonable inference therefrom. 310 Pa. Super. at 475, 456 A.2d at 1034. Defendant, by filing a demurrer, admits all relevant facts sufficiently pleaded, but not conclusions of law. If the court finds that it is clear and free from doubt that, upon the facts averred, the law will not permit the requested relief, the demurrer should be sustained and the complaint dismissed. *Id.* at 475, 456 A.2d at 1034.

The facts and inferences, as established by plaintiff's complaint, are succinct. Plaintiff, Harold D. Tallman, is the appointed administrator of the estate of Irene B. Tallman. The decedent was a named insured of policy number 233 SY 2353640 PCA, issued by defendant Aetna Casualty and Surety Company, which covered a 1983 Renault automobile and a 1974 Chevrolet pick-up truck. At all relevant times, the policy was in effect and the decedent was covered by its terms as a class 1 beneficiary.

At approximately 7:00 a.m. on June 10, 1986, Irene B. Tallman was operating the Renault vehicle in the southbound lane of U.S. Route 15 when a 1977 Dodge sedan, driven by Patrick J. Hennigan, crossed over into her lane and collided head-on with the Renault. Irene B. Tallman died as a result of injuries sustained from the accident. United States Fidelity and Guaranty Insurance Underwriters, Hennigan's insurer, tendered $95,613.22 to plain-

tiff which represented the limits of Hennigan's policy. Plaintiff accepted the USF&G offer.

The policy issued by defendant Aetna contained a maximum liability limit of $100,000 and underinsured and uninsured motorist coverage of $35,000. Part C of an amendment to the policy, under paragraph B of the heading Limit of Liability, provided that:

"If a single limit of liability for bodily injury liability is shown in the declarations for this coverage, this is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. We will apply this limit to provide any separate limits required by law for uninsured and underinsured motorists coverage. However, this provision will not change our total limit of liability."

Paragraph C2, also under the heading Limit of Liability, further limits paragraph B above and states:

"With respect to damages caused by the owner or operator of an underinsured motor vehicle, the applicable limit of liability under paragraph A or B above is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the accident."

The effect of these two quoted provisions is to limit the underinsurance coverage to $35,000 regardless of the number of vehicles covered by a policy.

Plaintiff has accepted the policy limits of the USF&G policy issued to Patrick J. Hennigan and because his policy insures two vehicles, he has made a demand on defendant for $70,000. Plaintiff's demand amount, which was refused, represents the underinsurance coverage that would be accorded the two vehicles under his policy. Plain-

tiff's loss is averred to exceed the combined total of the USF&G policy and the $35,000 underinsurance amount under his policy, thus bringing into issue the stacking of underinsurance coverage for the two insured vehicles under his policy.

The matter for decision is whether the policy provision which prohibits stacking of underinsurance coverages for two vehicles insured under one policy is contrary to the public policy expressed in the Motor Vehicle Financial Responsibility Law. The specific issue arising from this declaratory judgment action is not expressly dealt with in the Motor Vehicle Financial Responsibility Law and appears to be one that has not been addressed by the appellate courts of the commonwealth. The court, however, is not without guidance in deciding the issue.

In construing the MVFRL, section 1701 et seq. of Title 75, the court's objective is to ascertain and effectuate the intention of the general assembly. 1 Pa.C.S. §1921(a) (Purdon's 1987). The language of the MVFRL, though, is not explicit and the former law becomes relevant in ascertaining the legislative intent. 1 Pa.C.S. §1921(c)(5). The Uninsured Motorist Act, section 2000 of Title 40, is the former law and it is here that the analysis must begin.

The Uninsured Motorist Act mandated that motor vehicle policies issued or delivered in Pennsylvania provide coverage for damages sustained by owners or operators of uninsured motor vehicles. 40 Pa. C.S. §2000(a) (Purdon's 1971). Underinsurance coverage, for vehicles which did not carry enough liability insurance relative to the damages sustained in a particular accident, was permissive, not mandatory. 40 Pa.C.S. §2000(f).

In decisions under the UMA, courts struck down uninsurance anti-stacking clauses. In *Harleysville*

*Mutual Casualty Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968), the leading case on the subject, the Pennsylvania Supreme Court struck down the anti-stacking provision as void for violating the legislative intent of the UMA. The *Blumling* court relied primarily on the underlying rationale of the UMA and stated:

"The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist . . .

"We do not wish to imply that injured parties may be permitted to pyramid separate coverages so as to recover more than the actual loss . . . We do hold, however, . . . that where the loss exceeds the limits of one policy, the uninsured may proceed under other available policies up to their individual limits or to the amount of the actual loss." *Blumling* at 395-6, 241 A.2d at 115. Subsequent cases have consistently held that policy provisions prohibiting stacking of uninsured motorist coverage violated public policy and were void. See *Blocker v. Aetna Casualty and Surety Co.,* 232 Pa. Super. 111, 332 A.2d 476 (1975) (two coverages); *Sones v. Aetna Casualty and Surety Co.,* 270 Pa. Super. 330, 411 A.2d 552 (1979) (three coverages); *Novoseller v. Royal Globe Insurance Cos.,* 317 Pa. Super. 217, 463 A.2d 1163 (1983) (permitting nine vehicles).

Prior to October 1, 1984, the effective date of the MVFRL, Pennsylvania courts interpreted the UMA differently with regard to underinsurance anti-stacking provisions. Before 1984, underinsurance

was permissive which enabled insurance policies to be issued with stringent underinsurance anti-stacking provisions that were enforceable. In *Votedian v. General Accident Fire and Life Assurance Corp.*, 330 Pa. Super. 13, 478 A.2d 1324 (1984), the Superior Court stated:

"Underinsurance motorist coverage is not the same as uninsured motorist coverage. The Uninsured Motorist Coverage Act does not require underinsured motorist coverage; the statute contains no reference to and does not seek to regulate policies which provide underinsured motorist coverage . . .

"The legislature has not by statute established a policy which compels the writing of underinsured motorist coverage. An insurance company is wholly free to issue a policy of automobile liability insurance which contains no protection whatsoever against underinsured motorists. Although companies, for an additional premium, may undertake to write such coverage, the underinsured motorist feature is purely optional. An insured may purchase such coverage or he may decline to pay the premium charged therefor and accept a policy which contains no such coverage. When underinsured motorist coverage is included, the terms and limitations thereof are not controlled by statute or by public policy but by the agreement reached by the parties. That agreement, as expressed in the policy of insurance, may place limitations upon underinsured motorist coverage, subject only to the requirement that the limitation be clearly worded and conspicuously displayed." *Votedian*, 330 Pa. Super. at 18-9, 478 A.2d at 1327. (footnote omitted) Thus, under the UMA the courts adopted a liberal compensatory intent in voiding anti-stacking provisions pertaining to mandated uninsurance coverage.

The legislature is presumed to have been familiar with this case law prior to the passage of the MVFRL. *Raymond v. School District of the City of Scranton,* 186 Pa. Super. 352, 142 A.2d 749 (1958); 1 Pa.C.S. §1922(4) (Purdon's 1986). These same precedents which applied to limitations of liability clauses in uninsured motorist insurance policies now also apply to underinsured policy clauses and the MVFRL should be interpreted in light of the prior law. The MVFRL, also, did not repeal the UMA, but supplemented it by adding the requirement of underinsured motorist coverage. It is required, when statutes are in pari materia such as the UMA and the MVFRL, that they be construed together. 1 P.S. §1932(a) and (b) (Purdon's 1986). The court also notes that its interpretation of the MVFRL should be liberal to effect its objects and promote justice. 1 Pa.C.S. §1928(c) (Purdon's 1986).

The MVFRL places uninsurance coverage and underinsurance coverage on equal terms as can be seen by comparing sections 1731, 1732, 1735. Both coverages must be written for the same limits, and neither can be subject to an exclusion or reduction because of worker's compensation benefits. 75 Pa. C.S. §§1732, 1735. Section 1731 of the MVFRL provides:

"§1731. Scope and amount of coverage —

"(a) *General Rule* — No motor vehicle liability insurance policy shall be delivered or issued for delivery in this commonwealth, with respect to any motor vehicle registered or principally garaged in this commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as pro-

vided in section 1734 (relating to request for lower or higher limits of coverage).

"(b) *Uninsured motorist coverage* — Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles.

"(c) *Underinsured motorist coverage* — Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731 (Purdon's 1986). Both underinsurance and uninsurance are written identically and are now mandatory. Now that underinsurance is mandatory, the underlying factual premise upon which earlier courts relied to uphold underinsurance anti-stacking clauses no longer exists. Moreover, the language of the UMA is similar to that in the MVFRL which pertains to underinsurance and uninsurance. Cf., 40 Pa.C.S. § 2000(a) with 75 Pa.C.S. § 1731(c), (b). This mandated coverage and similar statutory language indicates that the legislature intended the UMA and MVFRL to serve the same purpose. Therefore, it follows that the same judicial precedents that prohibited uninsurance anti-stacking provisions should also apply to underinsurance anti-stacking provisions under the MVFRL.

A perusal of the other provisions of the MVFRL demonstrates that the General Assembly intended to continue to permit stacking of uninsured motorist coverage and place underinsurance on the same parity by allowing it to be stacked as well. The only limitation on an underinsurance recovery is a pro-

hibition that damages for a single accident may not be recovered under both uninsurance and underinsurance coverages. 75 Pa.C.S. §1731(d) (Purdon's 1986). The statute also specifically prohibits stacking of first-party benefits for multiple motor vehicles covered under the same policy but not for uninsured/underinsured motorists coverages. 75 Pa.C.S. §1717(1). The legislature limited underinsurance recovery in a specific manner and did the same for multiple vehicles under one policy by express language. Where specific language is included in one section of a statute and excluded from another, it should not be implied where excluded. *Patton v. Republic Steel Corp.*, 342 Pa. Super. 101, 492 A.2d 411 (1985).

Two lower court decisions under the MVFRL dealing with the stacking issue further support the proposition that the legislature intended to permit stacking underinsurance for two vehicles insured under one policy. In *Wolgemuth v. Harleysville Mutual Insurance Co.*, no. 85-01223, (Lebanon County, July 7, 1986) (Walter, *J.*), the court held that MVFRL did not prohibit a policy provision which disallowed stacking by a Class II beneficiary (guest passenger) of both liability and underinsurance coverage. In dictum, the court stated that:

"[I]f more than one vehicle is covered under one policy, then the named beneficiary and his family may recover the maximum coverage for all vehicles, not just the vehicle involved in the collision." *Wolgemuth*, slip op. at 7–8 (footnote omitted). Here, both plaintiff and decedent were named insureds under the policy and would be class I beneficiaries. See *Utica Mutual Insurance Co. v. Constrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). Similarly, in *White v. Westfield Insurance Co.*, no. 2060 (Washington County, November 5, 1986) (Rodgers, *J.*), the court

held that a policy provision prohibiting stacking of underinsurance coverages, by way of setoff among policies, violated the public policy expressed in the MVFRL.

The legislature was aware of the case law permitting stacking of uninsured motorist coverage prior to the MVFRL, yet it used the same statutory language in defining the scope and amount of underinsurance and uninsurance motorist coverage when it made the former mandatory. Nor did it prohibit stacking the two coverages as it had done in other sections of the MVFRL. Based on the foregoing examination of the law, the court holds those portions of defendant's policy, that prohibit stacking the underinsurance coverages of two vehicles insured under one policy, are in violation of the public policy expressed in the MVFRL. While an automobile insurance policy is a contract, defined by the parties, intent and expressed by its terms, policies written pursuant to a statute must be interpreted to give effect to the legislative intent. *Gerardi v. Harleysville Insurance Co.,* 293 Pa. Super. 375, 439 A.2d 160 (1981). Restrictions in the policy, such as those in the one before the bench, that are contrary to the legislative intent are void. *Shamey v. State Farm Mutual Automobile Insurance Co.,* 229 Pa. Super. 215, 331 A.2d 998 (1974).

Defendant, however, maintains that the law on stacking of underinsurance benefits did not change after enactment of the MVFRL and cites *Pirches v. General Accident Insurance Company,* 354 Pa. Super. 303, 511 A.2d 1349 (1986) and *Houston v. National Mutual Insurance Company,* 358 Pa. Super. 618, 518 A.2d 311 (1986). Both cases were decided after the passage of the MVFRL, but in neither case was the specific issue of stacking underinsurance coverage before the Superior

Court. Each decision states in a footnote, by way of dicta, that prior to the MVFRL stacking of underinsurance was not allowed. *Pirches, supra; Houston, supra.* Neither *Pirches* nor *Houston* were addressing underinsurance stacking and the court is not as convinced as defendant that they are persuasive authority.

Aetna views the underlying rationale of the prior case law allowing stacking of uninsurance benefits to be based on the fact that the UMA did not place any statutory maximum on the amount of underinsurance coverage, only a minimum amount that each policy must provide. From this, defendant argues that the MVFRL places limits on the maximum amount of underinsurance and this is said to be indicative of a legislative intent not to allow stacking of underinsurance coverage.

The court cannot concur, as previously discussed, with Aetna's view of the rationale allowing stacking in the uninsurance context. More important, the MVFRL places no limit on the amount of underinsurance coverage that may be afforded an insured, but merely limits the amount of underinsurance relative to other coverages. Section 1731(a) requires that underinsurance and uninsurance be provided in amounts equal to that required for bodily injury liability. 75 Pa.C.S. §1731(a). Under section 1702, bodily injury liability is required to be issued for a $15,000 minimum amount. 75 Pa.C.S. §1702. The MVFRL does not, however, place any limitation on the maximum amount of bodily injury liability that may be offered. 75 Pa.C.S. §1715(b).

A named insured is permitted to request underinsurance and uninsurance coverages for amounts less than the limits of liability for bodily injury contained in his policy, but not for amounts less than the $15,000 mandated by section 1702. 75

Pa.C.S. §1734. The insured can also request these coverages in amounts higher than $15,000, but in no event can it exceed the limits of his or her policy for bodily injury liability. 75 Pa.C.S. §1736. Since the MVFRL places no limit on the amount of bodily injury liability that can be issued, the net effect is that the $15,000 minimum must be purchased, yet a conceivably unlimited amount of underinsurance/uninsurance could be issued as long as a corresponding increase in bodily injury liability occurs. At best, defendant's argument can be said to show only that the legislature intended not to allow recovery of underinsurance benefits in excess of any particular policy's limits for bodily injury liability. It does not logically follow that the legislature meant to foreclose stacking of underinsurance. For the reasons set forth in the foregoing opinion, the provision in the policy and amendments issued by defendant which prohibits stacking under the factual circumstances of plaintiff's complaint for declaratory relief, is void as against the public policy.

Procedurally, even though defendant's demurrer cannot be sustained, the court will enter judgment on the declaratory complaint. Defendant Aetna still has the right to arbitrate factual issues set forth in the complaint that relate to the underlying substantive cause of action. *White v. Westfield Insurance Co.,* no. 86-2060, slip op. at 10 (Rodgers, J., 1986).

### ORDER

And now, June 10, 1987, it is ordered and directed that defendant's preliminary objection in the form of a demurrer is denied.

It is further ordered that the provision in the amendment of Personal Auto Policy, part C, subheading Limit of Liability, paragraph C2 of the

insurance policy issued by defendant Aetna Casualty and Surety Company, which purports to prohibit stacking of underinsurance coverages for multiple vehicles insured under one policy, is hereby declared invalid as a violation of the public policy expressed in the Motor Vehicle Financial Responsibility Law of Pennsylvania, 75 Pa. C.S. §1701 et seq.

All factual issues set forth in the complaint for declaratory relief, which are properly arbitrable under the insurance agreement attached to the complaint, shall remain subject to arbitration.