549 A.2d 935

**Nancy F. MITZELFELT and Lewis Mitzelfelt, Husband and Wife**

v.

**Robert KAMRIN, M.D., Earle Andre Wootton, Co–Executor of the Estate of Robert S. Andre, M.D., Deceased, The Fidelity Bank, Co–Executor of the Estate of Robert S. Andre, M.D., Deceased, Neurosurgical Associates and Riddle Memorial Hospital.**

**Appeal of RIDDLE MEMORIAL HOSPITAL.**

Superior Court of Pennsylvania.

Argued May 10, 1988.

Filed Sept. 20, 1988.

Reargument Denied Nov. 10, 1988.

122

William Sullivan, Philadelphia, for appellant.

William P. Murphy, Philadelphia, for Mitzelfelt, appellees.

Michael Saltzburg, Philadelphia, for Kamrin, appellees.

Before MONTEMURO, TAMILIA and JOHNSON, JJ.

MONTEMURO, Judge:

This is an appeal from an Order in the Court of Common Pleas of Philadelphia County dated May 14, 1986, denying Riddle Memorial Hospital's motion for a new trial and judgment n.o.v.

The lawsuit that is the basis of this appeal arose out of a medical malpractice claim commenced by Nancy F. Mitzelfelt and her husband. In her complaint, Mrs. Mitzelfelt alleged medical negligence in connection with a neurosurgical procedure performed by Dr. Robert Kamrin at appellant Riddle Memorial Hospital. Also named in her suit were Dr. Robert Andre, Dr. Kamrin's co-practitioner; Neurological Associates, a professional corporation composed of the two doctors; and Riddle Memorial Hospital, whose negligence allegedly flowed from the acts of its agents administering the anesthesia. Riddle, in turn, cross-claimed against Drs. Kamrin and Andre, alleging that Mrs. Mitzelfelt's injuries were the result of the negligence of its co-defendants and not the result of any negligence on the part of the hospital or its agents. As a result of her surgery, Mrs. Mitzelfelt now suffers from quadriparesis, a weakening of her extremities.

Pretrial discovery revealed two possible causes for Mrs. Mitzelfelt's injuries: an uncorrected drop in blood pressure during surgery which cut off the blood flow to the spinal cord; and the positioning of the head of the patient during surgery. The first theory implicated the conduct of those medical personnel providing the anesthesia. The second implicated the surgeons who performed the procedure.

124

On the first day of trial, Dr. Kamrin, the Estate of Dr. Andre and Neurological Associates settled with and obtained a joint tortfeasor release from the Mitzelfelts. Consequently, counsel for the Mitzelfelts presented no expert testimony to establish negligence on the part of the surgeons. The Mitzelfelts did, however, call as their sole liability expert Dr. Henry Shenkin, who they had not previously named as an expert in their pretrial memoranda, but who was the expert of the defendant surgeons. The testimony of Dr. Shenkin revolved around a small portion of a report he prepared prior to trial which referred to the issue of anesthesia and the potential liability of Riddle. At the close of Plaintiffs' case, all Defendants moved for a compulsory non-suit and were denied. At the close of all the evidence at trial, the court, on the motion of the defendant surgeons entered a directed verdict in their favor, finding that there was no evidence of negligence against them as a matter of law. As against Riddle, the jury returned a verdict in favor of the Mitzelfelts in the amount of $3,000,-000.00 which was subsequently molded to include delay damages. Riddle then filed timely post-trial motions, which were denied. The trial court entered judgment on the verdict and this appeal by Riddle followed. We reverse.

The question presented in this case is whether the appellees presented the competent expert testimony required to establish a prima facie case of medical malpractice. Resolution of this question is dependent upon whether the plaintiff's expert, Dr. Shenkin, expressed an opinion with sufficient certainty with respect to the cause of Mrs. Mitzelfelt's condition to allow the case to go to the jury. Because our review of the record reveals that Dr. Shenkin's opinion as to causation did not rise to the level of certitude necessary to constitute legally competent evidence, we find that the appellees failed to present a *prima facie* case of medical malpractice and accordingly reverse the judgment of the trial court.[1]

1. Because of our resolution of this issue we need not address the other issues raised in appellant's brief.

■ As a preliminary matter we address appellees' contention that Riddle has waived this issue for purposes of appeal. In its post-trial motions Riddle set forth this claim as follows:

> The trial court erred in refusing to grant a non-suit at the conclusion of plaintiff's case, where the only expert testimony offered by the plaintiffs on the question of negligence and causation was from Dr. Henry Shenkin, and where Dr. Shenkin testified that he could not say, within a reasonable degree of medical certainty, that a drop in blood pressure caused Nancy Mitzelfelt's paralysis.

The Mitzelfelts claim that Riddle has waived its challenge to the trial court's failure to grant a compulsory non-suit when it elected to put on its defense. In support of this proposition the Mitzelfelts cite *Burns v. City of Philadelphia*, 350 Pa.Super. 615, 504 A.2d 1321 (1986). In *Burns* we stated:

> A compulsory nonsuit can be granted at the close of plaintiff's case and before the defense presents any evidence. If the defendant elects to proceed, the non-suit stage is over and the correctness of the court's ruling is moot.

*Id.*, 350 Pa.Superior Ct. at 623, 504 A.2d at 1325.

Because the defendant in *Burns* elected to present its case after the plaintiff had rested, we refused to address the propriety "of the motion for compulsory non-suit as such." *Id.* However, we went on to address the underlying arguments in support of the motion for non-suit as arguments in support of the defendant's motion for judgment n.o.v. *Id.* Here too, as in *Burns*, we will treat Riddle's underlying claim of error as an argument in support of its motion for judgment n.o.v.

The standard of review that we employ in considering the propriety of an order granting or denying judgment n.o.v. is the same as the trial court's: the appellate court must determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference which can reasonably be drawn from the evidence and rejecting all unfavorable

testimony and inferences. Judgment n.o.v. may be granted only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Ingrassia Construction Company, Inc. v. Walsh,* 337 Pa.Super. 58, 61, 486 A.2d 478, 480 (1984).

■ Riddle contends that the verdict was improper because the plaintiffs failed to meet their burden of proof. More specifically, Riddle argues that there was insufficient competent expert testimony for the issue of causation to be submitted to the jury. The general rule in this Commonwealth is that in order to establish a cause of action for medical malpractice, the plaintiff must present expert testimony establishing variance from accepted medical practice and that this deviation from community standards caused the plaintiff's injuries. *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980); *Hamil v. Bashline,* 481 Pa. 256, 267, 392 A.2d 1280, 1285 (1978); *Denardo v. Carneval,* 297 Pa.Super. 484, 489, 444 A.2d 135, 137 (1982). The only exception to the general requirement that expert testimony must be produced is "where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons." *Chandler v. Cook,* 438 Pa. 447, 451, 265 A.2d 794, 796 (1970), citing *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963). The present case is one which falls under the general rule requiring expert testimony since questions as to the cause of Mrs. Mitzelfelt's quadriparesis are beyond the knowledge of the average layperson.[2]

As in other negligence cases, the plaintiff in a medical malpractice case bears the burden of proving a causal

**2.** We note that the present case is readily distinguishable from *Brannan v. Lankenau Hospital,* 490 Pa. 588, 417 A.2d 196 (1980), which has been relied upon by the dissent. In *Brannan,* our supreme court held that expert testimony was not necessary to establish that hospital staff's failure to notify the attending physician of a patient's deteriorating condition was negligent conduct. Instantly, whether Mrs. Mitzelfelt's present medical condition was caused by the conduct of the medical personnel who provided the anesthesia during her surgery is a complex medical question which requires the testimony of a qualified medical expert.

nexus between the wrongful conduct and the injury as part of the *prima facie* case. The plaintiff's "burden of proof" on this issue encompasses two separate and distinct burdens. C. McCORMICK, HANDBOOK OF THE LAW OF EVIDENCE § 336, at 947 (3d ed. 1984). The first burden, the burden of production, refers to the responsibility of the plaintiff to present evidence of sufficient quality and weight that reasonably intelligent men could believe in the existence of the causal link sought to be established. If the plaintiff fails to satisfy this initial burden, it becomes incumbent upon the trial judge to remove the issue from consideration by the jury, since any decision reached by the jury based on consideration of this evidence would involve an inordinate amount of speculation and conjecture. W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 37, at 205 (4th ed. 1971). If the plaintiff succeeds in presenting evidence of sufficient quality and weight so that the evidence is allowed to reach the jury, he or she must then satisfy the second burden, the burden of persuasion. The burden of persuasion involves convincing the jury that the preponderance of the evidence shows defendant's conduct to have been a substantial cause of the harm to the plaintiff. *Hamil, supra* 481 Pa. at 265, 392 A.2d at 1284.

■ The yardstick by which it is determined whether the expert testimony presented by the plaintiff is of a sufficient quality and weight so as to be proper evidence for jury consideration is "reasonable medical certainty." [3] *See Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920

---

**3.** There is a limited exception to the general rule requiring that the expert opinion demonstrate reasonable certainty with respect to the issue of causation. In *Hamil v. Bashline, supra,* our supreme court carved a narrow exception to the general rule to be applied in a limited context. In cases to which Section 323(a) of the Restatement (second) of Torts applies, the so called "lost chance cases", the issue of causation may be submitted to the jury upon a lesser showing of certainty. *Id.,* 481 Pa. at 269, 392 A.2d at 1288. The court stated:

Section 323(a) recognizes that a particular class of tort actions, of which this case is an example, differs from those cases normally sounding in tort. Whereas typically a plaintiff alleges that a defendant's act or omission set in motion a force which resulted in harm,

(1981); *Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674 (1980). Although the expert need not express his opinion in the same language that we use to enunciate the legal standard, the opinion, taken in its entirety, must demonstrate reasonable certainty that the result in question came from the cause alleged. *Pirches v. General Accident Insurance Company*, 354 Pa.Super. 303, 308, 511 A.2d 1349, 1352 (1986); *Kravinsky v. Glover*, 263 Pa.Super. 8, 396 A.2d 1349 (1979). Perhaps the most authoritative expression of the rule, and the policy reasons behind it, was set forth by our supreme court in *McMahon v. Young*, 442 Pa. 484, 276 A.2d 534 (1971). In *McMahon,* the physician testified that there was "probably a cause and effect relationship between the accident and the injury" and that the automobile accident was "consistent with that sort of injury." In finding the physician's testimony did not constitute legally competent evidence, the court opined:

> ... [T]he expert has to testify, not that the condition of the claimant might have, or even probably did, come

the theory of the present case is that the defendant's act or omission failed in a duty to protect against harm from another source. To resolve such a claim a fact-finder must consider not only what did occur, but also what might have occurred, i.e., whether the harm would have resulted from the independent source even if defendant had performed his service in a non-negligent manner. Such a determination as to what might have happened necessarily requires a weighing of probabilities.

*Id.* The court further reasoned that because fact patterns which fall within the confines of Section 323(a) "by their very nature elude the degree of certainty one would prefer and upon which the law normally insists before a person may be held liable", these cases will be permitted to go to the jury upon a showing that the defendant's acts or omissions have "increased the risk of harm to the plaintiff." *Id.* In finding that a lower standard of proof was appropriate given the peculiar nature of such cases, the court in *Hamil* also noted its decision was not meant "to undermine the well-established standard of 'reasonable degree of medical certainty' as the accepted norm for medical opinions on causation." Thus, the *Hamil* exception to the normal degree of certitude required for expert testimony applies only to those medical malpractice cases in which "the harm resulting from the improper treatment or lack of treatment is difficult to distinguish from the harm which could result even given the best treatment." *See* Note, Increased Risk of Harm: A New Standard for Sufficiency of Evidence of Causation in Medical Malpractice Cases, 65 B.U.L.Rev. 275 (1985).

from the accident, but that in his professional opinion the result in question came from the cause alleged. A less direct expression of opinion falls below the required standard of proof and does not constitute legally competent evidence ...

The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a medical expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that that condition was legally caused by the defendant's conduct. Here, the only evidence offered was that it was "probably" caused, and that is not enough. Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which the jury can make a decision with sufficient certainty so as to make a legal judgment.

*Id.*, 442 Pa. at 486, 276 A.2d at 535. Consequently, if the plaintiff's expert's testimony does not convey the requisite confidence, the jury will not be permitted to consider the evidence and speculate on the issue of causation.[4] It is only when the physician demonstrates reasonable certitude in his opinion that the expert testimony can be said to aid the trier of fact in resolving the ultimate issue of causation.

In the present case, the "target" defendants were Dr. Kamrin, the surgeon who performed the operation, Dr. Andre, his partner, and the professional corporation composed of the two doctors. The theory under which the plaintiff's asserted that the surgeons were liable was that

4. While the plaintiff's expert is required to express an opinion with reasonable medical certainty on the issue of causation, the defendant's rebuttal expert on the issue need not express such certainty. *See Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103 (1987).

Dr. Kamrin negligently positioned Mrs. Mitzelfelt's head and neck during the operation which allegedly resulted in her quadriparesis. On the day that trial was scheduled to commence, Dr. Kamrin, the Estate of Dr. Andre, and Neurological Associates, settled with the Mitzelfelt's and obtained a joint tortfeasor's release. As a result, the plaintiffs presented no expert testimony with respect to the negligence of the surgeons. Instead, the plaintiffs proceeded on the theory that Riddle was liable because its ostensible agent, the anesthesiologist, negligently failed to maintain Mrs. Mitzelfelt's blood pressure at a level which would facilitate blood flow to the spinal cord. The plaintiffs further claimed that the drop in blood pressure to 80/55 during the procedure caused Mrs. Mitzelfelt's quadriparesis. In support of this contention, plaintiffs called Dr. Shenkin, who had previously been the expert of the defendant surgeons. On direct examination by plaintiff's counsel, Dr. Shenkin testified as follows:

Q. Was it your opinion, and I assume any opinion you express is based upon your reasonable evaluation as a physician, isn't that true?

A. Yes, sir.

Q. And your opinion that this drop in blood pressure is sufficient to compromise the blood supply to the spinal cord of this particular patient in the upright position and under general anesthesia. You said that opinion in this letter, did you not?

A. Yes, sir.

Q. And that is your opinion, is it not?

A. I think that is what I think, yes.

Q. That is what you said there?

A. That is my opinion, whatever that means, yes.

N.T. August 29, 1984, at 175. However, on cross examination by defense counsel Dr. Shenkin equivocated on his earlier opinion as to the cause of Mrs. Mitzelfelt's condition:

Q. The bottom line is, do you know within a reasonable degree of medical certainty, can you tell the ladies and gentlemen of this jury within a reasonable degree of

medical certainty that this drop in that blood pressure, that one reading to something between 85 and 90 millimeters of mercury caused the problem that Mrs. Mitzelfelt has?

A. No. *It is my opinion that it could have, but I wouldn't put it as a reasonable degree of medical certainty.*

Q. I am asking you the question within a reasonable degree of medical certainty, can you say this drop, as you have testified to, caused Mrs. Mitzelfelt's condition?

A. No, I can't.

N.T. August 29, 1984, at 223–224 (emphasis added).

■ We believe that the totality of Dr. Shenkin's testimony reflects his belief that the drop in Mrs. Mitzelfelt's blood pressure during the operation "could have" caused her quadriparesis. A medical opinion that merely states that the cause alleged "could" lead to the condition in question does not rise to the level of certainty required to constitute competent evidence for jury consideration. *See Kravinsky, supra,* 263 Pa.Super. at 21, 396 A.2d at 1355. While it may be true that there was other evidence presented regarding the standard of care and breach of that standard which may have warranted submission of the question of negligence to the jury,[5] the record is devoid of expert testimony, other than Dr. Shenkin's, which could establish with reasonable certainty that Mrs. Mitzelfelt's condition resulted from the drop in blood pressure. In short, the probabilities with respect to the causative agent were not sufficiently linked to the patient's condition such that a jury determination on the issue would be shielded from the specter of undue speculation. As a result, we find that the plaintiffs failed to provide the competent medical evidence necessary to

5. Several witnesses, including Dr. Shenkin, testified that it was the function of the anesthesiologist to monitor the patients blood pressure during the course of the operation. In addition, Nurse McGrath, a nurse anesthetist, testified that in her opinion it would be negligence to allow a patient's blood pressure to fall to a level of 80/55 without taking corrective measures. Nurse McGrath did not testify, however, concerning her opinion of the cause of Mrs. Mitzelfelt's quadriparesis.

establish a material element of their *prima facie* case, namely, that conduct of the anesthesiologist caused Mrs. Mitzelfelt's quadriparesis. Because there was insufficient competent evidence to sustain the jury's verdict, we find that judgment n.o.v. was appropriate.

Accordingly, judgment is reversed.

TAMILIA, J., files a concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting:

While I agree with most of what the majority has written, I respectfully dissent from the ruling of the majority, which overturns the jury verdict against Riddle Memorial Hospital, because the testimony given by Dr. Shenkin, an expert relied upon by appellee, did not express an opinion with sufficient medical certainty with respect to the cause of Mrs. Mitzelfelt's condition to allow the case to go to the jury. I have no quarrel with the majority on its finding that failure to request a nonsuit, following appellees' case, would not result in a waiver when Riddle went on to put in its defense, when the motion for nonsuit can be construed to be a motion for judgment n.o.v.

The issue as posed by the appellant and ruled on favorably by the majority was whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference which can reasonably be drawn from the evidence and rejecting all unfavorable testimony and inferences. As such no two reasonable minds could fail to agree that the verdict was improper. *Ingrassia Construction Co., Inc. v. Walsh,* 337 Pa.Super. 58, 486 A.2d 478 (1984). I disagree with the majority that this test was met.

The majority correctly states the general rule for establishing malpractice in this Commonwealth that plaintiff must present expert testimony establishing variance from accepted medical practice and that this deviation from com-

munity standards caused the plaintiff's injuries (citations in majority).

As I view the case, the majority minimizes the impact of the testimony of Nurse McGrath, that in her opinion it would be negligence to allow a patient's blood pressure to fall to a level of 80/55 without taking corrective measures. The evidence in this case and the testimony of Nurse McGrath brings the case within the parameters of *Brannan v. Lankenau Hospital*, 490 Pa. 588, 417 A.2d 196 (1980), where the exception to the rule regarding expert testimony applied when "[t]he matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even nonprofessional persons", citing *Chandler v. Cook*, 438 Pa. 447, 265 A.2d 794 (1970); *Collins v. Hand*, 431 Pa. 378, 246 A.2d 398 (1968); *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963). *See* generally, Restatement (Second) of Torts, § 323B(d). There, the court went on to say: "We think it clear that staff failure to notify the attending physician of the deteriorating condition of one of his patients falls within the exception to the requirement of expert testimony." *Brannan*, 490 Pa. at 598, 417 A.2d at 201.

The error of the majority is treating Nurse McGrath's testimony as insignificant and relying totally on the failure of of Dr. Shenkin to state, on cross-examination, the drop in blood pressure caused Mrs. Mitzelfelt's condition within a reasonable degree of medical certainty. As to her qualifications, the standard is a liberal one: "If a witness has any reasonable pretention to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury." *Beary v. Container General Corp.*, 368 Pa.Super. 61, 74, 533 A.2d 716, 722 (1987), quoting *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 598, 437 A.2d 1198, 1201 (1981). As in *Brannan, supra*, from the hospital records there appeared to be a staff failure resulting in the patient's receiving care below an acceptable standard, and

from the testimony and evidence presented, a jury could reasonably find that Riddle was negligent.

Two things appear in this case that are ignored by the majority. First is that Nurse McGrath is a nurse anesthetist and as such she is sufficiently trained and skilled to be present daily in operations requiring anesthesia so that she has a knowledge of that field which would or should be only somewhat less than the doctor anesthetist. Her opinion as to the effect of permitting a patient's blood pressure to fall to a level of 80/55, without taking corrective measures, can not be ignored. The trial court treated her as an expert and, in fact, she is an expert. While she does not have the stature of Dr. Shenkin, her opinion that permitting this to happen was negligence carries weight, and despite Dr. Shenkin's refusal to state that the drop in blood pressure was the cause of injury, within a reasonable degree of medical certainty, at best, the statement of Dr. Shenkin is conflicting and qualified in relation to his prior statements, but in reality, even if the majority is correct on that aspect of the case, his testimony and that of Nurse McGrath as to the harm caused by a drop in blood pressure cannot be ignored, first as being negligence on the part of the anesthesiologist, and second as capable of causing serious harm. Put into perspective with the direct evidence from the hospital records as to the actual drop in blood pressure, failure to take action at that time and the well established opinion of all expert testimony, there was ample expert testimony and evidence for determination by the jury as to causation and liability. The plaintiff need not exclude every possible explanation and the fact that some other cause concurs with the negligence of defendant in producing injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independent of his negligence. *Jones v. Montefiore Hospital*, 494 Pa. 410, 431 A.2d 920 (1981).

Judge Mirarchi's Opinion clearly pointed out these matters and properly determined this was a jury question, as follows:

Dr. Henry Shenkin, a neurosurgeon, called by the plaintiff was qualified as an expert in his field. He outlined the procedure to be taken when a patient undergoing a cervical laminectomy sustains a drop in blood pressure. His procedure began with attempting to ascertain the cause and initiate preventive measures. He maintained that it was necessary to prevent "pooling of the blood in the lower extremeties [sic], or in the lower part of the body." The patient's legs must be wrapped, the patient is then placed in a g-suit or a g-blanket and/or administer drugs. The responsibility is with everyone concerned.

*"But, in treating that, the diagnoses of the pressure dropping is in the hands of the anesthesist [sic] who is recording the blood pressure and the treatment, therefore is generally in their hands because the surgeon is busy surgeoning [sic]."* (emphasis supplied) (N.T. 1.171)

Dr. Shenkin further testified that a drop in blood pressure as sustained by the plaintiff was "sufficient to compromise the blood supply to the spinal cord of this particular patient in the upright position and under general anesthesia." (N.T. 1.73–1.75)

Nurse MARLENE MC GRATH testified that it is the responsibility of the anesthesia department to monitor the vital signs of the patient. She further testified that if the blood pressure dropped too low she would take corrective measures to bring it up. Specifically, McGrath testified that she would take measures to bring up plaintiff's blood pressure if it had dropped to eighty (80) over fifty-five (55). (3.144). *In the instant case, the record indicates such a drop in pressure. The record further indicates that no corrective measures were taken during plaintiff's surgery* (emphasis added).

Defendant's expert medical witness in neuro-anesthesiology, on cross-examination, stated in his report the plaintiff, Nancy Mitzelfelt had a [sic] intraoperative range of blood pressure between 100 and 80 systolic. However, when he examined the original chart he testified that it did not show an 80 systolic. This inconsistency between

136

his report and testimony was properly a question for jury determination.

Slip Op., Mirarchi, J., 12/30/87, pp. 16–17.

While the majority would have us rule that absent the explicit testimony of a doctor medical expert, the jury cannot be permitted to make a determination as this would amount to mere speculation. That rule applies only in the situation when no other competent evidence is available upon which a decision can be made. Such is not the case here as the record is complete as to causation and liability and sufficient for a jury to find that the hospital is liable under an agency theory, due to the negligence of the anesthesiologist. While there might be some conflict in the testimony, it has been held that conflict in testimony is fatal only if absolute. *Menarde v. Philadelphia Transportation Co.*, 376 Pa. 497, 103 A.2d 681 (1954).

I would affirm the jury verdict and resolve all other issues in favor of the plaintiff as I perceive no reversible error as to the remaining issues.