533 A.2d 716

**Jerry M. BEARY, Appellee,**

**v.**

**CONTAINER GENERAL CORPORATION, a corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 9, 1986.

Filed Oct. 1, 1987.

Reargument Denied Nov. 25, 1987.

62

64

Chester S. Fossee, Pittsburgh, for appellant.

John R. Gavin, Oil City, for appellee.

Before DEL SOLE, KELLY and POPOVICH, JJ.

KELLY, Judge:

This appeal arises from the trial court's denial of appellant's (Container) motions for judgment n.o.v. and a new trial. We modify judgment and affirm.

The instant action commenced when appellee/plaintiff, Jerry Beary (Beary), filed suit sounding in trespass against

Pennsylvania Electric Company [1] and appellant Glass Containers Corporation, now Container General Corporation. Container joined Edwards Tank Erection, Inc. (Edwards), Beary's employer, as an additional defendant upon a theory of contractual indemnity.

The first trial commenced October 19, 1981 [2] and, at the conclusion of the testimony on October 23, 1981, the trial court directed the jury to return a verdict for Container and against Beary. On appeal to this Court, the trial court's directed verdict was reversed, and the case remanded for a new trial. *Beary v. Pennsylvania Electric Co. and Glass Containers*, 322 Pa.Super. 52, 469 A.2d 176 (1983).

The second liability trial commenced November 13, 1984 and resulted in a jury verdict that Beary and Container were equally negligent. However, when the jury returned on November 20, 1984, after a recess, to decide the damages issue, the court declared a mistrial because several jurors had read a newspaper article concerning the case, contrary to the trial court's admonition. The jury eventually impanelled to decide the amount of the damages returned a verdict of $500,000. The verdict was molded to $250,000 for Beary, plus delay damages of $133,424.27 pursuant to Pa.R.C.P. 238. On March 5, 1986, Container's motion for new trial or for judgment n.o.v. was denied. Timely appeal to this Court followed.

Appellee Beary was injured in the course of his employment on September 13, 1976. His employer, Edwards Tank, had entered a contract to construct a 100,000 gallon fuel tank on the premises of Container General Corporation. A mobile crane with an extendable fifty-five (55) foot boom was to be used in the construction of the tank. Steel plates were to be welded together to form the tank. Appellant was to provide the necessary electrical power for Edwards' welding equipment. (N.T. at 56).

1. PECO was granted an uncontested compulsory nonsuit.
2. The court bifurcated Beary's claim against Container as to liability and damages. Container's indemnification claim against Edwards was likewise bifurcated.

Before work could begin, a panel box weighing somewhere between 200 and 500 pounds had to be connected to the source of electricity located in the "batch house." The batch house was located up a narrow gravel road, approximately 174 feet from the construction site. The Edwards crew used the boom of the mobile crane to transport the panel box uphill to the batch house, as was their standard practice (N.T. at 447); appellee Beary walked backwards alongside the box, holding the wires to steady the box while directing the crane operator up the narrow road. (N.T. at 132–135). Electrical wires were suspended 43 feet above the roadway, 130 feet from the construction site, between the construction site and the batch house. As Beary proceeded, facing the crane and walking backwards uphill, the boom of the crane came into contact with the electrical wires. Beary was severely injured as a result of his exposure to the electrical current.

On appeal, Container raises the following questions:

I. Was [Container] free of causal negligence so as to entitle it to a judgment n.o.v.?

II. Did [Edwards Tank] the independent contractor create a dangerous condition on the land of [Container] that [Container] was not required to anticipate so as to entitle [Container] to a judgment n.o.v.?

III. Did the lower court err in permitting [Beary's] expert to testify on the basis of matters beyond the record to opinions on ultimate issues, which opinions were confusing, misleading and prejudicial to [Container] so as to entitle [Container] to a new trial?

IV. Did the lower court err in granting [Beary's] points for charge Nos. 9, 13 and 15 when the evidence in the case failed to support said charges so as to entitle [Container] to a new trial?

V. Did the lower court err in granting [Beary's] points for charge No's. [sic] 6 and 18 when the evidence in the case failed to support said charges so as to entitle [Container] to a new trial?

VI. Did the trial court err in assessing Rule 238 delay damages during periods while [Container] had a directed verdict in its favor?

We shall address each question *seriatim.* Initially, we note that our sole duty on review of a denial of judgment n.o.v., or refusal of a new trial:

> ... is to decide whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner, [the appellee herein] the benefit of every favorable inference reasonably to be drawn from the evidence. All unfavorable testimony and inferences must be rejected. As to reviewing on appeal the grant or refusal of a new trial, we will not reverse the lower court's action 'absent an abuse of discretion or error of law which controlled the outcome of the case.'

*McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. 438, 442, 450 A.2d 991, 993 (1982).

## I.

Container first argues that the record is devoid of evidence establishing any causal negligence on the part of Container. Specifically, Container argues Beary failed to show that:

> [Container] knew or should have known of the existence on its land of a condition which involved an unreasonable risk of harm to [Beary], that [Container] should have expected that [Beary] would fail to protect itself against the known danger, and that [Container] failed to exercise reasonable care to protect [Beary] against said danger.

(Container Brief at 10). Container's argument is premised upon Beary's alleged failure to demonstrate Container's liability under Section 343 of the Restatement of Torts, Second, which provides in part:

> **§ 343. Dangerous Conditions Known to or Discoverable by Possessor**
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

### § 343 A.  Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

.        .        .        .        .

Beary's burden of proof in this matter was to set forth facts sufficient to establish by a fair preponderance of the evidence that Container had not met its duty of care under Section 343. *Seewagen v. Vanderkluet,* 338 Pa.Super. 534, 540, 488 A.2d 21, 23 (1985).  Our review of the record indicates that Beary demonstrated the electrical wires over the roadway were of high voltage (34,500) (N.T. at 101). Container's chief electrician knew the high voltage nature of the power flow.  (N.T. at 101).  Neither he, nor any other of Container's employees communicated this knowledge to Beary or other Edwards' employees.  (N.T. at 61, 76, 97, 445).  Beary does not remember what, if anything, he was told about the wires, although his employer testified he warned Beary to look for the wires.  Although the wires may have been obvious, or at least known, the nature of the current carried by the wires was not obvious.  (N.T. at 447). *See also Beary, supra,* 469 A.2d at 179; *Stimmel v. Kerr,* 394 Pa. 609, 148 A.2d 232 (1959).[3]  None of Container's

---

**3.**  "The *presence of the power lines* in and of itself *did not indicate obvious danger.*  Plaintiff was not bound to know the degree of danger involved.  'Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous.  The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case.'"

employees considered turning off or deenergizing the lines. (N.T. at 83–84). The wires were not covered or insulated despite the availability of such precautionary covers. (N.T. at 82–83, 107). Nor were there signs posted to warn of the danger. (N.T. at 35, 102, 139). Container's employees did not know who, if anyone, was in charge of briefing Edwards as to known safety hazards at the work site. (N.T. at 36–38).

Container's employees were aware that a crane would be used in the construction process (N.T. at 34, 55, 57) and saw the specific crane in operation immediately before the accident. (N.T. at 71, 102–103). Container knew the 500–pound panel box would have to be transported up the road, under the wires, to the batch house. None of Container's employees, however, considered or planned for the possibility that the crane or its boom might be used to carry the box and thus would travel under the electrical wires. (N.T. at 72, 105).

■■ A transmission line is a dangerous instrumentality and the law requires that the possessor of such instrumentality exercise *a high degree of care*. *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 130 A.2d 123 (1957) (emphasis added); *accord Yoffee v. Pennsylvania Power & Light Co.*, 385 Pa. 520, 123 A.2d 636 (1956).

> Enigmatic as is the basic element of electricity, no one with the slightest mentality is ignorant of its vast potentialities for destruction. The degree of care required to protect people from this devastating element is no less than that required to prevent poisonous reptiles from breaking loose from their restraining enclosures. As the proprietor of ferocious beasts may not, by pleading excessive cost for confining them, escape liability for the loss of life occasioned by his savage wards, so also *the owner of high-voltaged electric machinery may not avoid re-*

*Beary, supra,* 469 A.2d at 179. (Emphasis added). Because evidence was presented that Container should have expected Beary would fail to realize the danger, there is no need to address Container's argument that Beary failed to protect himself. § 343(b).

sponsibility for the devastation caused through his failure to adequately guard such uninhibited devices. This court has declared that *when human life is at stake the rule of due care and diligence require everything that gives reasonable promise of its preservation to be done regardless of difficulties or expense.*

*Cooper v. Heintz Manufacturing Co.*, 385 Pa. 296, 304, 122 A.2d 699, 703 (1956). (Musmanno, J.). (Emphasis added).

■ We thus find that ample evidence of Container's negligence was presented to the jury. The jury could reasonably infer from the evidence presented that Container knew that the wires posed a dangerous condition, and should have realized that the presence of dangerous high voltage wires, uninsulated, and with no warning signs posted nearby, when combined with the use of a mobile crane, would present an unreasonable risk of harm to Edwards' employees. The jury could also infer that Beary might not recognize the extremely high voltage nature of the wires. Finally, they could infer that by neglecting to warn, to install insulating covers, or to post warning markers, Container failed to "exercise ... reasonable care to protect" Edwards and his workmen from the extreme degree of danger the wires posed. Restatement Torts, Second, § 343.

■ Moreover, in the alternative, the jury could infer from the evidence presented that, even if the electrical wires were obvious, Container should have anticipated that while working in the vicinity of the wires with its mobile crane and its boom, Edwards' employees might be distracted and via the boom inadvertently come into contact with the wires. As Comment f to Section 343 A of the Restatement states, in part:

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, *where the possessor has reason to expect that the invitee's attention may be distracted,* so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. *Such reason may also arise where the possessor has reason to expect that the invi-*

*tee will proceed to encounter the known or obvious danger* because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496 D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

*Quoted in Skalos v. Higgins*, 303 Pa.Super. 107, 117, 449 A.2d 601, 605–606 (1982). (Emphasis added). Thus the jury could also infer that Container failed in a duty of care owed under Section 343 A.

## II.

■ Container's second contention is that Edwards, as an independent contractor, created the hazard to its own employee, by causing its crane to be moved into the power line, and consequently, Container should be relieved from responsibility for Beary's injury. Container cites *Hader v. Coplay Cement Manufacturing Co.*, 410 Pa. 139, 189 A.2d 271 (1963) in support of its contention. However, we deem *Hader* factually distinguishable from the facts herein.

In *Hader*, Coplay Cement Manufacturing Company had entered a contract whereby an independent contractor was to install a stone crusher and to erect a structure to house the crusher on Coplay's property. While carrying some construction material, Hader, an employee of the independent contractor, slipped and fell some 35 feet through an open space in the construction. Coplay exercised no control over the work, or the premises where the work was to occur. In *Hader*, our Supreme Court noted that the owner of the land had delivered possession of his land to the independent contractor; therefore, the Court held that:

[a]n owner of land who *delivers temporary possession* of a portion of the land to an independent contractor *owes no duty* to the employees of the independent contractor

with respect to an *obviously dangerous condition* on that portion of the land in the possession of the contractor.

*Hader, supra,* 189 A.2d at 277. (Emphasis added). *See also* Restatement of Torts 2d, § 328E.

Herein, there are several distinguishing factors. First, we have not found any evidence that Container delivered possession of any portion of their land to Edwards; certainly there was no delivery of that portion of land where the wires or the batch house were located, as Container remained responsible for providing electricity to power Edwards' welding equipment. (N.T. at 56). Thus, the *Hader* rule of an independent contractor's duty does not apply to our factual situation.

Second, the danger posed by installing a stone crusher in *Hader* is inherently different from the danger posed by electrical wires in the vicinity of the independent contractor's work site. Whereas the installation of any machine may pose a limited danger, the presence of high voltage wires poses a high degree of danger. Thus the duty imposed on whomever controls the electricity must be correspondingly greater. *Beary, supra,* 469 A.2d at 180; *Yoffee, supra; Cooper, supra.* Because Container remained in control of the electricity and thereby responsible for the safety of all those to whom it presented a foreseeable danger, we find no factual predicate for relieving Container of its duty of care.

Third, Container was aware that Edwards would have to move the weighty panel box under the wires to the batchhouse. Yet Container's employees failed to anticipate or ascertain how the box was to be transported. Edwards did not unilaterally create the hazard by moving its crane; Container created the hazard by failing to warn Edwards not to move the crane under the wires. Accordingly, we agree that there was sufficient evidence to sustain the verdict, and Container is not entitled to a judgment n.o.v. on this issue.

### III.

Container's third contention is that the lower court erred in admitting the testimony of Mr. Alexander R. Chamberlin, who was qualified by the court to testify as an expert witness. Container argues that Chamberlin's opinion testimony "was based on mere speculation and assumed facts never established of record." (Container's Brief at 23).

The law regarding the qualification of a witness as an expert is well-established.

When a witness is offered as an expert, the first question the trial court should ask is whether the subject on which the witness will express an opinion is so distinctively related to some science, business or occupation as to be beyond the knowledge of the average layman and if answered in the affirmative, the next question the court should ask is whether the witness has sufficient skill, knowledge or expertise in that field as to make it appear that his opinion will probably aid the trier in his search for truth.

*Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 35, 485 A.2d 408 (1984), appeal dismissed 508 Pa. 643, 500 A.2d 428.

Moreover, "[i]f a witness has any reasonable pretension to specialized knowledge on the subject under investigation, he may testify, and the weight to be given to his evidence is for the jury." (Per Flaherty, J., with two Justices concurring and one concurring in the result). *Rutter v. Northeastern Beaver County School Dist.,* 496 Pa. 590, 598, 437 A.2d 1198, 1201 (1981), quoting *Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974). Finally, "the question of the qualifications of an expert witness is one for the discretion of the trial court." *Morris v. Moss,* 290 Pa.Super. 587, 591, 435 A.2d 184, 186 (1981).

■ Beary's expert, Chamberlin, was a certified professional engineer with more than forty years experience in the fields of mechanical and mining engineering. He was knowledgable of the standards for industrial safety, and had worked with and planned for the use of high voltage

electricity in various construction projects. (N.T. at 210–11). There is no question that these engineering occupations are beyond the knowledge of the average layperson. His background, therefore, qualified him as an expert witness to aid the jury in its deliberations. *Dambacher, supra.*

However, Container maintains Chamberlin based his opinion on facts not of record. "Absent some basis in fact, opinion testimony is inadmissible and to admit such evidence would be an abuse of the trial court's discretion." *Rose v. Hoover,* 231 Pa.Super. 251, 254–55, 331 A.2d 878, 880 (1974). *Accord, Palmeri v. Com., Pennsylvania State Police,* 82 Pa.Cmwlth. 348, 474 A.2d 1223 (1984), *affirmed* 508 Pa. 544, 499 A.2d 278 (1985). ("While an expert's opinion need not be based on an absolute certainty, an opinion based on mere possibilities is not competent evidence.")

█ Specifically, Container cites Chamberlin's alleged speculation as to the weather conditions at the time of the accident, the noise levels present at the scene of the accident, and other "distractions on a work site that can cause men to be hurt...." as facts not in the record forming the basis of Chamberlin's opinion. (N.T. at 248, Appellant's Brief at 24). Container also argues with Chamberlin's ultimate conclusion: "[t]he fact that work was proximate to the 34,500 foot power line was a hazard...." (N.T. at 250).

> A qualified expert may be permitted to assert relevant facts not generally known but known to him because of his *special training and experience,* but such special training and experience must be confined to technical knowledge which is beyond that of average men and to that which would be of *assistance in determining ultimate issues* in case.

*Reardon v. Meehan,* 424 Pa. 460, 465, 227 A.2d 667, 670 (1967). (Emphasis added). *See also Pirches v. General Acc. Ins. Co.,* 354 Pa.Super. 303, 511 A.2d 1349 (1986). A statement of opinion is admissible if the witness has had an opportunity of personal observation and has obtained some

impressions from observation. *Simmons v. Mullen,* 231 Pa.Super. 199, 331 A.2d 892 (1974).

■ We find, upon examination of the trial transcript, that when Chamberlin testified [4] as to the weather conditions, he was not expressing an opinion as to actual weather conditions the day of the accident, but rather explaining his personal observations of the accident site, and his knowledge that:

> ... copper conductors when they are in the air for a comparatively short time they get a coating on the outside which is green in color.... *They are virtually invisible, especially if* you are against a bright sky where you have the sun in back of you, shining on it and they are green.

(N.T. at 232–33). (Emphasis added). Chamberlin did not say the day of the accident was a sunny day, but rather the wires were "virtually invisible" in any type of weather, "especially" sunny days. Chamberlin's testimony was properly admitted, as founded both upon his special training and experience, and his personal observations.

Next, our examination of the trial transcript demonstrates that Container's counsel forcefully objected to prevent Chamberlin from expressing any baseless speculation as to noise levels at the scene of the accident. (N.T. at 239, 240, 241). The trial judge sustained Container's objections to impermissible, baseless speculation. (N.T. at 242). Thus, Container's argument that speculation was permitted is not supported by the record. When Chamberlin stated the basis for his opinion as to distractions at the work site, he was limited to specifying those noise-producing machines known through previous testimony to be in operation at the time of the accident:

4. Our examination of the record reveals Container's counsel failed to object to Chamberlin's statement at trial. In order to preserve an issue for appeal, a litigant must make a timely specific objection at trial. Failure to object leads this Court to conclude the issue is waived. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985). We nonetheless will discuss Container's contention.

A. Gasoline powered Galion crane; the gasoline powered welder that was being used before the electrical welders were connected; the fact the trucks, tractor-trailers hauling sand drove along the road beside those tanks; the fact that immediately adjacent to the power lines in back of the first tank was a road that appears to be fairly heavily traveled by cars and trucks....

(N.T. at 243–244). (*See* N.T. at 128–129 for testimony providing factual basis). Thus, there was no error in permitting Chamberlin's limited testimony. *Rose, supra.*

Finally, Container contends that Chamberlin's opinion that the unmarked, uncovered powerline was dangerously "approximate" or "near" to the work site is not borne out by the facts in evidence. The work site was 130 feet from the power lines. (N.T. at 53). Chamberlin based his opinion (that 130 feet was "near") on his expert knowledge of normal, acceptable work practice, and his knowledge of the speed and mobility of the crane involved in the accident. (N.T. at 260–290). Any speculative or baseless testimony expressed by Chamberlin was struck by the trial judge. (*See* N.T. 237, 240, 244).

While it is true that expert opinion on ultimate issues is not admissible where such testimony would confuse, mislead or prejudice the jury, *Bessemer Stores v. Reed Shaw Stenhouse, Inc.,* 344 Pa.Super. 218, 496 A.2d 762 (1985), we note that Chamberlin's testimony did not serve to confuse, mislead, or prejudice but rather to aid the jury in the determination of complex issues beyond the ordinary ken of a layperson. *Dambacher, supra; Reardon, supra.*

■ Chamberlin's testimony that, given the crane's potential and actual operation, the wires were dangerously near the work site, was properly admitted as an opinion since it was premised on facts in the record and facts from his own area of expertise. Whether the wires presented an unreasonable danger was only one of the "ultimate issues" to be decided by the jury. The weight to be given Chamberlin's opinion along with the other evidence presented on that

issue, including the defense experts, was for the jury to determine. *Rutter, supra; Kuisis, supra.* The trial court did not abuse its discretion by permitting the jury to consider Chamberlin's opinion. Container, accordingly, is not entitled to a new trial on this issue.

## IV. and V.

Container's fourth and fifth contentions involve allegations of trial court error in the jury instructions. Initially, we note our standard in reviewing such allegations. "A trial judge has wide latitude in charging the jury and may use any particular language provided the language used adequately and fully conveys the laws applicable to the facts of the case." *Seewagen v. Vanderkluet, supra,* 488 A.2d at 26 (1985).

"A jury 'charge should be clear and precise and so couched as to not confuse the jury.' However, 'contradictory instructions are not always reversible error. An erroneous statement of law in one portion of the charge can be rendered harmless by a subsequent correct statement of the same principles if the jury is clearly instructed that the latter statement ... is the correct statement.'" *Dunlap v. Larkin,* 342 Pa.Super. 594, 605, 493 A.2d 750, 756 (1985) (citation omitted). "Whether the jury should be instructed on a given point of law, of course, depends upon the facts and the issues in the case. It is axiomatic that where there is a dispute as to what the relevant facts are, this dispute must be submitted to the jury along with instructions on points of law which, with a view to the evidence in the case, are relevant." *Ferrick v. Excavating and Grading Co. v. Senger Trucking Co.,* 506 Pa. 181, 190, 484 A.2d 744, 748 (1984). "In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party." *Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority, supra,* 489 A.2d at 1305.

■ Container contends that it was error to give Charge No. 9 as it was not based on any evidence, it was improperly premised on the case of *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 130 A.2d 123 (1957), and it served to confuse and mislead the jury. That portion of the charge provided:

> If you determine that the wires were not patently obvious to Beary and unknown to him as a business visitor, he is not required to make an independent survey to determine whether the possessor of the land has in fact performed his duty.

(N.T. at 458). However, our review of the record indicates there were factual disputes as to whether appellee Beary had seen or knew of the wires, and as to whether the wires were clearly visible. (N.T. at 364–367, 445, 232–33). This factual dispute was for the jury to decide. *Ferrick, supra.* Accordingly, the jury was properly instructed that, should they decide that Beary was unaware of the wires, the law would not require Beary to independently survey appellant's land to find dangerous conditions such as wires.[5] Furthermore, the charge was neither confusing nor misleading but an accurate statement of applicable law as to a landowner's duties to a business invitee. The principle of law enunciated in *Stark, supra,* was applicable to the facts of this case. The jury had to determine appellant's duties before finding a breach of that duty.[6]

■ Jury Charge No. 13, Container contends, was not required by evidence in the record. We disagree. The trial court charged:

[5]. Container argues that Beary's job, and not the law, required that he survey the land. However, Beary's job function is not at issue with this charge; rather, that issue properly was covered in the instructions on contributory negligence. This charge was necessary to cover the law as to appellant's duty under Restatement Torts, 2d § 343.

[6]. Container and Beary dispute whether this charge went to Beary's contributory negligence or to Container's liability. (Container's brief at 33; Beary's brief at 28). It goes to Container's duty as possessor of the land. *See* note 5, *supra.* The trial court premised this instruction by noting: "an invitee in certain circumstances must be protected even from obvious dangers." (N.T. at 458).

> Our law of torts has traditionally required a higher degree of care in situations where the risk of injury is greater. Vigilence must always be commensurate with danger. A high degree of danger always calls for a high degree of care.

(N.T. at 458–459). As a matter of law, electricity is a dangerous instrumentality requiring "a high degree of care." *Yoffee, supra.* "The degree of care required to protect people from this devastating element is no less than that required to prevent poisonous reptiles from breaking loose from their restraining enclosures." *Cooper, supra,* 122 A.2d at 703. The learned trial judge prefaced his charge with a statement that, if the jury determined that the location of the power line might be a source of peril, then the jury must also determine if "... [Container] met with its requirement of a higher degree of care." (N.T. at 458). Since the possible breach of Container's duty of care was an essential issue in litigation, and sufficient evidence was presented to demonstrate Container's negligence, including evidence concerning the location of the powerlines, this charge was properly submitted to the jury.

■ Charge No. 15 again correctly restates the law, that power lines do not always constitute an *obvious* danger. *Stimmel v. Kerr, supra.* The charge read:

> The presence of the power lines in and of itself did not indicate obvious danger. Plaintiff was not bound to know the degree of danger involved. Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, is not bound to know its degree in any particular case.

(N.T. at 459). Container argues this charge is not supported by the evidence. However, the charge is supported by the testimony of several employees that they were unaware of the amount of current conducted through the wires. (*See* N.T. at 139). Even several of Container's

employees did not know the voltage carried by the wires. (N.T. at 34, 53). Accordingly, we find no merit to Container's arguments concerning Charge No. 15.

■ Container contends Charge No. 6 was error because "there is no evidence in the record whatsoever to indicate that [Container] had any reason to expect that [Beary] would be distracted and consequently injured," (Container's brief at 36), nor any evidence that distractions did occur. The instruction stated:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases, *the possessor is not relieved of the duty of reasonable care* which he owes to the invitee for his protection. *This duty may require him to warn the invitee, or to take other reasonable steps to protect him,* against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered, or fail to protect himself against it.

(N.T. at 457–58). (Emphasis added). Our review of the record disclosed there was testimony as to: the noise emanating from machines and passing trucks at the scene of the accident; an expert opinion given that such noises would constitute a distraction; and appellant's employees were aware of the sources of the noise. (*See* N.T. at 128–129, 243–244). Accordingly, this charge was properly founded upon facts in the record. Moreover, it is not a confusing charge, read in the context of the charge as a whole, as it does tell the jury the significance of distractions in the context of Container's duty of care. *Reilly, supra.*

■ Container contends that Charge No. 18 was improper because it was premised on *Skoda v. West Penn Power Co.*, 411 Pa. 323, 191 A.2d 822 (1963), a case with facts distinguishable from the facts herein. The charge, as delivered, stated:

> There is evidence in the record that the plaintiff was warned of the high-tension lines. The area in which the plaintiff was engaged in his work at the time of the accident was in the vicinity of these lines. You must decide whether or not the plaintiff could become *so engrossed* in his work *as to make him temporarily oblivious* to any other surrounding danger.

(N.T. at 459). (Emphasis added). Specifically, Container argues that the decedent in *Skoda* was injured as a result of a danger totally unrelated to his usual job function, whereas Beary was injured in the performance of his job. Thus, Container argues, Beary, while performing his job, should not have become so engrossed. Beary, however, correctly states that the jury did ultimately find that he was contributorily negligent. Thus, Container does not and cannot demonstrate how this instruction was prejudicial. Where a party fails to demonstrate harm, we will not hold it to be reversible error. *Anderson v. Hughes*, 417 Pa. 87, 208 A.2d 789 (1965).

Container also argues that charge 18 was confusing, and directs our attention to the jury's subsequent question of the instruction: "You read something about a worker getting so involved in his job that something happens and we didn't get the point of law." (N.T. at 471). The trial court cured whatever confusion may have existed by its response to the question. The trial judge sent into the jury a copy of charge 6 (*see* reproduced *supra*) giving the point of law applicable. Any alleged error concerning Charge No. 18 was, therefore, rendered harmless. *See Dunlap, supra; Reilly, supra*. Accordingly, we find no merit to Container's claims of error in this instruction.

Having reviewed the charge to the jury in its entirety, we find no error. The trial judge properly instructed the jury on all the relevant law. *Dunlap, supra; Ferrick, supra*.

## VI.

Container's final contention involves the trial court's assessment of delay damages; the court molded the verdict to include delay damages in the amount of $133,424.27, pursuant to Pa.R.C.P. 238. The court below included delay damages from the date of filing the complaint through the judgment rendered at the second trial, inclusive. Container contends that the court erred in assessing delay damages during the period between the original directed verdict in Container's favor, October 1981, and this Court's reversal of that verdict, which Container erroneously dates as February 28, 1984.[7]

■■■ Container properly cites *Hawthorne v. Dravo Corp., et al.,* 352 Pa.Super. 359, 508 A.2d 298 (1986) in support of its argument. In *Hawthorne,* we held that no delay damages should accrue from the date of the entry of the first judgment, until that judgment was reversed on appeal. During that appeal period, the verdict winner is entitled to rely on the validity of the judgment. *Hawthorne,* 508 A.2d at 308. Thus Container's argument has merit, and we conclude that any delay during the appellate process is not a matter for the trial court to consider when assessing delay damages under Rule 238.[8]

7. We note Container incorrectly dates this Court's previous award of the new trial as February 28, 1984. Our order in *Beary v. Pennsylvania Electric Company, supra,* which awarded Beary a new trial, was issued by the Superior Court Prothonotary on November 18, 1983. Appellee informs us that February 28, 1984 was the date the record was received in the lower court. (Appellee's brief at 35). However, the date of issuance of the order by the Prothonotary of this Court is the effective date of the remand, rather than the date the record was received in the lower court. *See* Pa.R.A.P. 2521.

8. We note that since the filing of this appeal and our decision in *Hawthorne,* there have been intervening changes in the law of delay damages. In *Craig v. Magee Memorial Rehab. Center,* 512 Pa. 60, 515 A.2d 1350 (1986), our state Supreme Court reconsidered its previous mandatory rule of delay damages, and directed that, henceforth, delay damages should not be assessed without reference to the respective fault of the parties. *Craig* applies retroactively only where an appellant has properly preserved a Rule 238 due process challenge. *Morgan v. Monessen Southwestern Ry. Co.,* 513 Pa. 86, 518 A.2d 1171 (1986); *Bolus, et al. v. United Penn Bank, et al.,* 363 Pa.Super. 247, 525

The portion of the judgment which exceeds $250,000.00 is vacated and we modify the order such that no delay damages be awarded for the period from October 23, 1981, the date of filing the appeal from the first judgment in this case, through November 18, 1983, the date this Court awarded Beary a new trial. The amount of delay damages to be rescinded is $51,644.00.[9]

As so modified, the judgment is affirmed.

A.2d 1215 (1987). Appellant did not raise any due process challenge in his appellate brief, but only a challenge based upon *Hawthorne.* Our analysis of *Craig* assures us that *Craig* does not change the point of law decided in *Hawthorne;* delay due to an intervening appeal is not to be considered by a trial court when molding a verdict in a second trial.

9. Container, relying erroneously on the date of February 28, 1984 instead of November 18, 1983, overestimates the amount of delay damages to be rescinded as $58,766.72. (*See* Container's brief at 43). *See* footnote 7, *supra.*