**Bonsall v. Kutztown Fire Company**

C.P. of Berks County, no. 03-3119.

*Richard P. Haaz,* for plaintiff.
*Robertson B. Taylor,* for defendant Kutztown Fire Co.
*Frank G. Procyk,* for defendant Barclay Contracting Co.

LASH, *J.,* July 10, 2006—The matter before this court is the motion of defendant, Kutztown Fire Company, for summary judgment. Plaintiff, Todd Bonsall, seeks damages for injuries he suffered on June 18, 2001, when he fell through a roof of a building owned by defendant Kutztown. Plaintiff was present on the roof as an employee of White Brothers Construction Inc., an independent contractor hired to perform repairs to the roof. Defendant Kutztown denies liability, claiming it has no duty to plaintiff because the independent contractor was in temporary possession of the area of the premises where the accident occurred and, therefore, had sole responsibility for acts or omissions occurring thereon. For reasons set forth herein, this court grants the motion for summary judgment.

According to the record, in the winter of 1996, the roof sustained snow damage. Defendant Kutztown's insurer, Pennsylvania Mutual Insurance Company (PMI), directed defendant Kutztown to contract with defendant, Barclay Contracting Company, to handle repairs to the roof. Defendant Kutztown's president, Daniel Smith, and a representative of defendant Barclay met to discuss the problem. Defendant Barclay's representative offered two options: installation of a rubber roof or a torch applied roof. Defendant Kutztown opted for the torch applied roof, which defendant Barclay installed.

Approximately one year after installation, the roof began to leak. From June of 1997 until June of 2001, Smith contacted defendant Barclay 10 or 12 times to repair the roof. Defendant Barclay's representatives came out on one or two occasions to perform patch jobs. However, the leaking continued.

Sometime early in 2001, defendant Barclay's vice president, Jim Spinosa, and its estimator, Kurt D. Fritz, along with Smith, examined the roof. Fritz observed bubbles and cracks on the roof and recommended to Smith that the entire roof be replaced and that he notify his insurance company. Subsequently, PMI adjuster Chris Wright contacted Fritz and scheduled a meeting to examine the roof. Spinosa, Fritz, Wright, and Smith went up on the roof for an examination in late March or early April 2001. Afterwards, Wright asked Fritz to prepare an estimate to repair the roof but told him he did not want defendant Barclay to perform the repairs because PMI did not wish to pay defendant Barclay's 21

percent overhead and profit charges. Wright also asked Fritz to recommend a roofer for the Kutztown job, and Fritz recommended White Brothers. Defendant Barclay later prepared an estimate for the roof repairs and sent it to PMI.

On or about June 11, 2001, White Brothers' employees, Bobby White Sr. and plaintiff, examined the roof with Smith. White informed Smith that the roof had to be completely rebuilt starting with a metal decking. John White of White Brothers called Fritz and informed him about the redecking of the roof. Fritz then called Wright and gave him an estimate for the costs of redecking. PMI approved the decking and on or about June 14, 2001, White Brothers began its work.

Bobby White Sr. and plaintiff inspected the roof before the repairs began. At that time, plaintiff and White both observed that the roof was in poor condition. Plaintiff could see that the roof was "bowed" (sagged) in spots, that the deck of the roof was "shot," that the roof was unsafe to walk on in certain locations because of depressions, and that half the roof consisted of these depressions. White, likewise, observed that the deck was "bowing" and that the roof was unrepairable and unsafe to walk on. On June 18, 2001, during the course of the roof repair, plaintiff fell through the roof and sustained serious personal injuries.

Plaintiff commenced this action by writ of summons against both defendants on March 21, 2003. The complaint was subsequently filed on May 19, 2003. Argument on defendant Kutztown's motion for summary judgment was held on June 22, 2006.

In *Jones v. SEPTA,* 565 Pa. 211, 216, 772 A.2d 435, 438 (2001), the Supreme Court restated the standard for granting summary judgment:

"Summary judgment will be entered only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law. *Skipworth v. Lead Industries Association Inc.,* 547 Pa. 224, 230, 690 A.2d 169, 171 (1997). Summary judgment is proper in cases in which 'an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to a cause of action or defense in which a jury trial would require the issues be submitted to a jury.' Pa.R.C.P. 1035.2(2). We review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992)."

The authority for defendant Kutztown's motion comes from the Pennsylvania Supreme Court case of *Hader v. Coplay Cement Mfg. Company,* 410 Pa. 139, 189 A.2d 271 (1963). In *Hader,* the Supreme Court held that an owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor. The court noted the rationale of this ruling, originally set forth in *Silveus v. Grossman,* 307 Pa. 272, 278, 161 A. 362, 364 (1932):

"The very phrase 'independent contractor' implies that the contactor is independent in the manner of doing the work contracted for. How can the other party control the contractor who is engaged to do the work and who presumably knows more about it than the man who by contract authorized him to do it? Responsibility goes with authority." 410 Pa. at 151, 189 A.2d at 277.

In opposing the motion for summary judgment, plaintiff relies primarily on the case of *Beary v. Container General Corporation,* 368 Pa. Super. 61, 533 A.2d 716 (1987). In *Beary,* an employee of an independent contractor performing work on defendant's property was injured when he came into contact with high voltage wires. The question posed was whether the defendant was charged with a duty of care under section 343 of the Restatement (Second) of Torts. Section 343 provides, in part:

"Section 343. Dangerous conditions known to or discoverable by possessor.

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger.

"Section 343A. Known or obvious dangers.

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

Similar to the within matter, defendant owner in *Beary* claimed that the independent contractor should be solely responsible for its employee's injuries based upon the *Hader* holding. However, the Superior Court distinguished *Hader* because, among other things, defendant owner remained responsible for providing electricity to power the independent contractor's equipment and was deemed to never have delivered possession of that portion of the land where the wires were located.

Plaintiff's reliance on the *Beary* holding is misplaced. Unlike the defendant owner in *Beary,* defendant Kutztown was out of control of the roof where the accident occurred, as this was also the location where the work for which the contractor was hired was being performed. As stated in *Hader:*

"An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises: *Bitting v. Wolfe,* 368 Pa. 167, 82 A.2d 21 (1951); *Engle v. Reider,* 366 Pa. 411, 77 A.2d 621 (1951); *Patterson v. Palley Manufacturing Company,* 360 Pa. 259, 61 A.2d 861 (1948); *Valles v. Peoples-Pittsburgh Trust Company,* 339 Pa. 33, 13 A.2d

19 (1940); *Powell v. Ligon,* 334 Pa. 250, 5 A.2d 373 (1939)." 410 Pa. at 151, 189 A.2d at 277.

Plaintiff also contends that summary judgment cannot be granted because there is a material factual dispute over whether defendant Barclay was actually the general contractor supervising the repairs. According to plaintiff, the circumscribing of defendant Kutztown's duties set forth in *Hader* extends only to defendant Barclay's employees. Defendant Kutztown would still be responsible for other contractors' employees, such as plaintiff.

In considering the extent of defendant Kutztown's duty, we perceive no distinction over whether defendant Barclay or White Brothers was the contractor in charge of the repairs. During the time the repairs were being performed by plaintiff and other employees of White Brothers, either defendant Barclay as general contractor or White Brothers as the general or subcontractor was responsible for supervising the work being performed by plaintiff, and was in control of the location for that purpose. Defendant Kutztown was out of possession for the time it took to make the necessary repairs. The duty to protect the employees from any dangerous condition on the premises was not, at the time the accident occurred, the responsibility of defendant Kutztown.

There are exceptions to the *Hader* holding which also must be considered. The first is known as the "retained control exception," appearing in section 414 of the Restatement (Second) of Torts. The exception was summarized by the Commonwealth Court in the case of

*LaChance v. Michael Baker Corporation,* 869 A.2d 1054, 1057-58, (Pa. Commw. 2005), where the court stated:

"An owner of property does not have a duty to protect the employees of an independent contractor from risks arising from or created by the job contracted. *Celender v. Allegheny County Sanitary Authority,* 208 Pa. Super. 390, 222 A.2d 461, 463 (1966). However, under section 414 of the Restatement (Second) of Torts, the landowner that retains and exercises control over the work of the independent contractor can be held liable for failure to exercise that control reasonably; it states: 'One who entrusts work to an independent contractor, *but who retains the control of any part of the work, is subject to liability* for physical harm to others for whose safety the employer owes a duty to exercise responsible care, which is caused by his failure to exercise his control with reasonable care.' Restatement (Second) of Torts, §414 (1965) . . . .

"The retained control exception usually applies in the situation where a general contractor fails to use reasonable care in supervising its subcontractors. While the general contractor's retained control may be less than that of a master over a servant, mere supervision over the work of a subcontractor, up to and including the right to stop a project, is not control sufficient to impose liability. The comment explains the requisite degree of control as follows:

"(c) In order for the rule stated in this section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. *It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or*

*to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.* Section 414 comment c." (footnotes omitted) (emphasis in original)

There is no evidence in the record which establishes that defendant Kutztown exercised any level of supervision or control over White Brothers' work, either directly or through defendant Barclay. Defendant Kutztown did little more than maintain a presence through Smith, who was there ostensibly to receive assessments on the nature and extent of the need for repair and to monitor progress.

A second exception to the *Hader* holding, known as the peculiar risk exception, also does not apply. That exception is set forth in section 416 and section 427 of the Restatement (Second) of Torts, which states as follows:

"Section 416. Work dangerous in absence of special precautions.

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

"Section 427. Negligence as to danger inherent in the work.

"One who employs an independent contactor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precaution against such danger." [1]

In the case of *Edwards v. Franklin & Marshall College, supra,* the court, citing *Ortiz v. Ra-El Development Corp.,* 365 Pa. Super. 48, 528 A.2d 1355, (1987), *alloc. denied,* 517 Pa. 608, 536 A.2d 1332 (1987), construes section 416 and section 427, stating that a special danger or peculiar risk exists where:

"(1) the risk is foreseeable to the employer of the independent contractor at the time the contract is executed, *i.e.,* a reasonable person, in the position of the employer, would foresee the risk and recognize the need to take special measurers; *and*

"(2) the risk is different from the usual and ordinary risk associated with the general type of work done, *i.e.,* the specific project or task chosen by the employer involves circumstances that are substantially out-of-the-ordinary." 444 Pa. Super. at 6, 663 A.2d at 190. (emphasis in original)

---

1. The terms "peculiar risk" and "special danger" are used interchangeably. *Edwards v. Franklin & Marshall College,* 444 Pa. Super. 1, 5, 663 A.2d 187, 189 (1995).

The *Edwards* case also involved a plaintiff employee of an independent contractor who fell through a roof while patching the roof on the building that the contractor was hired to renovate. The court found that the risk of falling through a roof which was deteriorating and in need of repair was not the type of risk which involved unusually dangerous circumstances to the plaintiff invitee, who was present on the roof for the express purpose of making repairs, particularly when the condition of the roof was known and warnings had been given.

The holding in *Edwards* is indistinguishable from the case at bar. The risks plaintiff faced were standard risks associated with the repair of a roof. It was known to him and his employer that portions of the roof were in poor shape and may not be strong enough to bear his weight. While the circumstances were very likely dangerous, they were certainly not peculiar or uncommon. Plaintiff cannot establish that the risk was different than the usual and ordinary risk associated with the roofing industry.

Plaintiff has failed to present any basis for the imposition of liability against defendant Kutztown. Accordingly, we enter the following order:

## ORDER

And now, July 10, 2006, upon consideration of the motion of defendant, Kutztown Fire Company, for summary judgment, response thereto, briefs filed by the parties, and after argument held, the motion for summary judgment is granted. Judgment is entered in favor of defendant, Kutztown Fire Company, and against plaintiff, Todd Bonsall.